# MEMORANDUM

OF

# A CASE NOT REPORTED IN FULL.

JOHN JONES, RESPONDENT, *v.* THE UTICA AND BLACK RIVER RAILROAD COMPANY, APPELLANT.

*Negligence—opinion of a physician as to the probable effect upon the health, of injuries sustained by a woman—right of a husband to recover damages for the loss of his wife's society.*

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury at the Oneida Circuit and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

The action was brought to recover damages sustained by the plaintiff for injuries suffered by his wife by reason of the defendant's alleged negligence. February 1, 1882, at about two o'clock P. M., the plaintiff's wife was injured at a highway crossing, known as "Price's Crossing," in the town of Remsen.

The court at General Term said: "The attending physician of the wife was asked: 'Q. What, in your opinion, must be, in the ordinary course of nature, the effect upon the health of Mrs. Jones of the injuries described by you on the side of her head, shoulders, abdomen and limbs?' This question was objected to by defendant as incompetent and immaterial, which was overruled and an exception taken. 'A. I think the injury across the abdomen would have a tendency to injure her general health more than the others. The necessary consequences would be producing this miscarriage — this weakness of the female organs of generation, *prolapsus uteri,* and a tendency to produce this weakness which would last for a lifetime.' That the injuries were severe is undisputed. She was pregnant at the time, and so far advanced that she had previously felt motion, but after the injury she discovered no signs of life in the foetus. March 18, 1882, she was prematurely delivered of a dead child, which the attending physician testified

was partially decomposed. He also testified that from September, 1883, to about the time of the trial, she had suffered from prolapsus uteri and leucorrhœa. It was competent for the attending physician to give his opinion as to whether her condition resulted from the injury or from other causes. (*Matteson* v. *N. Y. C. R. R.*, 35 N. Y., 487, 492; *Matteson and Wife* v. *N. Y. C. R. R.*, 62 Barb. 364; *Anthony* v. *Smith*, 4 Bosw., 503.) It was also competent for the attending physician to give his opinion as to the natural and probable duration of the disease. (*Strohm* v. *The N. Y., L. E. and W. R. R. Co.*, 96 N. Y., 305; *Tozer* v. *N. Y. C. and H. R. R. R. Co.*, 38 Hun, 100; Rogers' Ex. Ev., § 51; Lawson's E. and O. Ev., Rule 27, p. 114.) The fact that, in his opinion, her difficulties were permanent and incurable did not render his answer incompetent or immaterial as speculative.

&ast;  &ast;  &ast;  &ast;  &ast;

" From the plaintiff's evidence it appears that his direct pecuniary damages, capable of proof by computable items, were less than $500 at the time of the trial. The damages were assessed at $1,800. The court, after instructing the jury that the plaintiff was entitled to recover all expenses incurred by reason of the injury, together with such damages as had been, or would be occasioned by the diminished ability of the wife to labor, further instructed the jury : ' It will be for you to fix such a sum as you, in your best judgment, would say would fairly compensate the plaintiff for the injury which he has sustained in the loss of the society and services of his wife.' This was excepted to, and it is urged that the plaintiff, not having been deprived of the society of his wife, the direction that damages might be assessed for loss of society, was error.

" For a day or two after the injury the wife was at times unconscious, and at times delirious. To this extent the husband lost the intelligent companionship or society of the wife, but there was no other loss of companionship. The defendant insists that there is no ' loss of society' in a legal sense, so long as the marital relation is unimpaired or the union unbroken, and that a temporary or permanent diminution of the physical power of the wife to contribute to the happiness of the husband does not authorize a recovery for the loss of society. It is further insisted that if the foregoing proposition is not the limit of the right of recovery for the loss of society,

that damages upon this ground are only recoverable in cases of intentional trespasses or wrongs, and never in cases of unintentional injuries; that when the wrong is unintentional, the husband can only recover such direct pecuniary damages as are capable of exact measurement, or of estimation with some degree of certainty. We have been unable to find an exact or an approximate definition of the term 'loss of society.' Damages for this cause have been more frequently assessed in cases arising from intentional injuries to marital rights, resulting in a dissolution or suspension of the marital relation. At an early date, the remedy for such injuries was an action of trespass with force and arms, but later, an action on the case was held appropriate, and it was said in such a case, though quite unnecessary for the decision, that if a husband loses the society and assistance of his wife by an accidental tortuous act of the defendant, an action will lie. (*Winsmore* v. *Greenbank,* Willes, 577; *Baker* v. *Bolton,* 1 Camp., 493.) The action was for the recovery of damages for injuring the plaintiff's wife while traveling in defendant's stage coach, from the effects of which she died in about a month, and it was held the husband could recover for the loss of his wife's society from the date of her injury to the date of her death.

" *Lynch* v. *Davis* (12 How. Pr., 323) was an action by a husband to recover damages for unskillful practice of a physician, resulting in the death of the plaintiff's wife, and the same rule was held on demurrer at Special Term. *Philippi* v. *Wolff* (14 Abb. [N. S.], 196) was an action by a husband to recover damages for an abortion produced by defendant upon plaintiff's wife, and resulting in her death, and the same rule was held in *Hopkins* v. *The Atlantic and St. Lawrence Railroad* (36 N. H., 9), the plaintiff's wife was injured on defendant's road, and it was held that an assessment of damages for the loss of the wife's services and society was proper.

"In *Green* v. *Hudson River Railroad Company* (32 Barb., 25) the wife was instantly killed, and in *Blake* v. *Midland Railway Company* (18 Q. B., 93), the husband died the day after the injury, and both actions were brought under statutes.

"*Cregin* v. *Brooklyn Cross-town Railroad* (18 Hun, 368; S. C., 19 id., 341; S. C., 75 N. Y., 192; S. C., 83 id., 595) was an action by a husband to recover damages for injury to his wife while being carried

by defendant.   Before trial the husband died.   The action was continued by his administrator, and it was held (83 N. Y., 595) that the right to recover for loss of society did not survive, but it seems to be assumed that the husband might have recovered for this loss.

"If a wife is injured by a carrier, the husband may recover for loss of service, expenses and for loss of society (2 Wood's Ry. Law, 1245, § 317; 2 Rorer Ry. Law, 1094, 1095; 2 Thomp. Neg., 1240), and if the wife be intentionally injured, the husband may recover for loss of society.   (Sch. Dom. Rel., § 77.)

"Under the authorities we think the instruction given, that the plaintiff was entitled to recover for loss of society, was correct, and that being so, we cannot say that the damages are excessive.

"The order and judgment are affirmed, with costs."

*A. M. Beardsley,* for the appellant.

*Spriggs, Matthews & Spriggs,* for the respondent.

Opinion by FOLLETT, J.; HARDIN, P. J., and BOARDMAN, J., concurred.

Judgment and order affirmed, with costs.